UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 07-CR-20027 |
| ) | |
| **L.C. BELL,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

This case is before the court for ruling on Defendant's Motion to Suppress Evidence (#11). This court has carefully considered the oral arguments presented by the parties on June 6, 2007, as well as the written submissions by the parties. Following this careful and thorough review, Defendant's Motion to Suppress Evidence (#11) is DENIED.

## BACKGROUND

On March 7, 2007, Defendant, L. C. Bell, was charged by indictment (#7) with: (1) knowingly possessing five grams or more of a mixture and substance containing cocaine base ("crack"), a Schedule II controlled substance, with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); and (2) unlawful possession of a firearm after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Defendant is represented by Robert Alvarado of the Federal Public Defender's office and has been detained pending trial.

## MOTION TO SUPPRESS

### I. FACTS

On April 25, 2007, Defendant filed a Motion to Suppress Evidence (#11). Defendant argued that the evidence seized from an apartment, pursuant to a search warrant, and from a vehicle sitting outside of the apartment, should be suppressed. According to Defendant, the affidavit in support

of the complaint for a "no knock" search warrant failed to set forth sufficient facts which would lead a neutral and detached magistrate to conclude that there was probable cause to believe that evidence of a controlled substance offense would be present at the residence. Defendant relied on United States v. Koerth, 312 F.3d 862 (7th Cir. 2002) in arguing that the information provided in the affidavit was not sufficient to establish probable cause. Defendant also argued that the search warrant did not give the officers authority to search the vehicle. Defendant requested "the entry of an Order suppressing a) all items of physical evidence which were seized from the residence and automobile as described above, and b) all statements, communications, admissions and confessions, whether written or oral, and whether inculpatory or exculpatory, which are alleged to have been made by the Defendant to officers and agents of the East Central Illinois Task Force at the time of and subsequent to his arrest on February 22, 2007." Defendant attached: a copy of the search warrant issued on February 22, 2007, which authorized a search of the upstairs apartment located on the east side of the building at 1601 9th Street, Charleston, Illinois; a copy of the complaint for a "no knock" search warrant; and a copy of the affidavit of Jeff Endsley, a sworn law enforcement officer with the East Central Illinois Task Force, in support of the complaint for a "no knock" search warrant.

On May 21, 2007, the Government filed its Response to Defendant's Motion to Suppress Evidence (#13). The Government stated that, in the months preceding February 22, 2007, Inspector Endsley and other agents of the East Central Illinois Task Force (ECITF) arrested individuals involved in the sale and delivery of crack cocaine. Several of those individuals stated that Defendant was actively involved in selling crack cocaine. During this time period, Inspector Endsley and other ECITF agents spoke with individuals acting as confidential sources for ECITF. These individuals also stated that Defendant was actively involved in selling and delivering crack cocaine. Inspector Endsley learned that Defendant had prior arrests and convictions for violations of the Illinois Controlled Substances Act and for armed robbery.

Inspector Endsley then spoke to a confidential informant (CI) who told Inspector Endsley that he had just left Defendant's second story apartment at 1601 9th Street in Charleston, Illinois. The CI stated that, inside Defendant's apartment, he saw two plastic baggies containing crack cocaine and a large quantity of United States currency sitting on a table in the living room. The CI also stated that he had been to Defendant's apartment on other occasions and had seen crack cocaine inside the residence. The CI stated that he had seen crack cocaine in the past and knew what it looked like. The CI said that, on several occasions while inside Defendant's apartment, he had observed at least one handgun concealed under the couch. The CI also noted that in the past Defendant had threatened to physically harm persons with the gun and had loaned his gun to others to threaten people.

Within 24 hours of receiving this information from the CI, Inspector Endsley signed a sworn complaint and affidavit in which he sought a search warrant for Defendant's apartment to search for evidence of drug activity. Inspector Endsley's affidavit included all of the information stated above. In the affidavit, Inspector Endsley referred to the CI as "Rob Hale, an assumed name." Inspector Endsley also stated that the apartment was occupied by Defendant and a female named Tasha. A Coles County Circuit Judge issued the search warrant on February 22, 2007, and the apartment was searched that day.

As law enforcement officers began the search, they found Defendant alone in the apartment. Defendant told the officers that "everything he had" was in the corner behind a futon. The officers looked in the corner and found two plastic bags that contained 39 individually wrapped bags of an off-white, chunky substance that appeared to be cocaine base ("crack") and weighed 36.5 grams. The substance was later tested at the Illinois State Police forensic laboratory and determined to be cocaine base. The officers also searched other locations in the apartment and found two digital scales, $787 in United States currency, a loaded Davis Industries .380 caliber pistol, serial number

AP 453453, a loaded Ruger .22 caliber pistol, serial number 19-87541, a box containing eighty .22 caliber rounds of ammunition, and a box containing .380 caliber ammunition.

The Government noted that, as the law enforcement officers approached the building to execute the search warrant, they observed Latasha Jamison sitting in the driver's seat of a Dodge Magnum parked outside the building. The Dodge Magnum was rented in the name of another female. Ms. Jamison was detained as the officers executed the warrant and was then arrested after the contraband was found inside the apartment. The Dodge Magnum was searched incident to Ms. Jamison's arrest, and officers found approximately 0.5 grams of crack cocaine and 4.0 grams of cannabis inside the driver's side door. The officers also found a plastic bag containing cocaine residue in the back seat.

The Government argued that Defendant's Motion to Suppress Evidence should be denied because: (1) Defendant lacked standing to contest the search of the Dodge Magnum because it was not owned, registered to, or possessed by Defendant, and Ms. Jamison, not Defendant, was the only person found inside the car; (2) Defendant failed to meet his burden of showing illegality because the search warrant was supported by probable cause; and (3) even if Defendant were able to meet his burden of establishing that the warrant was not supported by probable cause, suppression of the evidence would not be warranted because the law enforcement officers in good faith reasonably relied on a search warrant issued by a detached and neutral judge.

## II.  HEARING

A hearing was held on June 6, 2007. At the hearing, Defendant's counsel stated that no evidence would be presented in support of the Motion to Suppress. Defendant's counsel also stated that Defendant was withdrawing his request as far as the evidence seized from the car. Defendant's counsel then argued that the search warrant affidavit in this case is remarkably similar to the affidavit at issue in United States v. Peck, 317 F.3d 754 (7th Cir.2003). In Peck, a case which originated in this court, the Seventh Circuit determined that, based on the totality of the

circumstances, the affidavit was not sufficient to support the issuance of the search warrant. However, the Seventh Circuit determined that it was reasonable for the police officer in the case to rely on a warrant issued by a neutral and detached officer of the court so that the good faith exception applied.

Defendant's counsel argued, based upon United States v. Harju, 466 F.3d 602 (7th Cir. 2006), that the good faith exception should not apply in this case because the affidavit was indistinguishable from the affidavit found insufficient in Peck so the police officer in this case could not reasonably rely on the warrant.

In response, the Government argued that the affidavit in this case is not the same as the affidavit at issue in Peck and is, rather, the same as the affidavit in United States v. Olson, 408 F.3d 366 (7th Cir. 2005), which the Seventh Circuit found was sufficient to establish probable cause. The Government contended that Olson is more closely on point factually. The Government also argued that, based upon Olson, a police officer would in good faith believe that the affidavit was sufficient.

III. ANALYSIS

1. PROBABLE CAUSE FOR ISSUANCE OF SEARCH WARRANT

The Fourth Amendment provides that warrants may issue, but only upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. Accordingly, a search warrant must be supported by an affidavit sufficient to provide the issuing judge "with a substantial basis for determining the existence of probable cause." United States v. Walker, 237 F.3d 845, 850 (7th Cir. 2001), quoting United States v. Leon, 468 U.S. 897, 915 (1984). When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. Peck, 317 F.3d at 755; Koerth, 312 F.3d at 866. Probable cause sufficient to support a warrant exists where, considering the totality of the circumstances, "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief

that contraband or evidence of a crime will be found." Olson, 408 F.3d at 370, quoting Ornelas v. Unites States, 517 U.S. 690, 696 (1996). When an informant provides the facts and circumstances used to support a finding of probable cause, the legitimacy of the probable cause finding is determined by assessing the informant's "reliability, veracity and basis of knowledge." United States v. Taylor, 471 F.3d 832, 839 (7th Cir. 2006). The inquiry considers whether the informant "(1) had firsthand knowledge; (2) provided sufficient details; (3) relayed information that was subsequently corroborated; and (4) testified at the probable cause hearing." Taylor, 471 F.3d at 839, quoting Olson, 408 F.3d at 370. In Koerth, the case originally relied upon by Defendant, the search warrant affidavit stated that an informant "believed to be reliable" saw a large amount of marijuana in the defendant's residence. Koerth, 312 F.3d at 867. The Seventh Circuit stated that the conclusory characterization of the informant's reliability merited absolutely no weight so that the information had to be treated as information obtained from an informant of unknown reliability. Koerth, 312 F.3d at 867. The Seventh Circuit concluded that "[t]o uphold the state judge's ruling in this case would be to ratify the search of a home based on the use of essentially conclusory statements without corroboration." Koerth, 312 F.3d at 868. In fact, the Government had conceded that the affidavit failed to establish a substantial basis for concluding that there was probable cause to search Koerth's house. Koerth, 312 F.3d at 867. The Seventh Circuit therefore held that the warrant was invalid. Koerth, 312 F.3d at 868.

In Peck, the case Defendant cited at the hearing, a deputy sheriff received a telephone call from a female confidential informant who alleged that the defendant possessed crack cocaine and cannabis. Peck, 317 F.3d at 755. The confidential informant also told the officer that she wanted the defendant punished because he was not paying for diapers for their child and she thought the defendant should be arrested because he was dealing drugs. Peck, 317 F.3d at 755. The confidential informant stated that she had been inside the defendant's residence within the last two days and, while there, the defendant showed her large amounts of two substances wrapped in individual

packages. She stated that the defendant told her the substances were crack cocaine and marijuana that he planned to sell. The confidential informant claimed that she knew what the substances were based on her own "personal experiences." Peck, 317 F.3d at 755. The confidential informant appeared before the judge, who administered an oath to her, and she signed the affidavit which included her statements. Peck, 317 F.3d at 755. This court found that, under these facts, there was enough information to establish probable cause that there were drugs in the defendant's apartment. Peck, 317 F.3d at 755. The Seventh Circuit disagreed, finding that there was insufficient evidence to support a finding of probable cause because the confidential informant's statement lacked sufficient detail and there was no independent police corroboration. Peck, 317 F.3d at 756.

Defendant argues that, in this case, the affidavit does not establish the reliability of the CI or corroborate any of the allegations made by the CI except to state that several other unnamed individuals identified Defendant as someone who allegedly sold crack cocaine. Defendant argues that, in fact, Inspector Endsley did not even corroborate the assertion the Defendant lived at the apartment. Defendant further contends that the information provided by the CI lacked sufficient detail for the issuing judge to properly evaluate it, pointing out that the CI did not describe the amount of crack cocaine he observed, how much money he observed, what type of handgun he saw, or even whether Defendant was present in the apartment at the time. Defendant argues that, in addition, the CI did not indicate that he saw the handgun within the previous 24 hours, nor did he name any of the individuals Defendant supposedly loaned the firearm to. Defendant contends that, based upon Koerth and Peck, the warrant in this case was invalid.

In Response, the Government contends that this case is more similar to Olson. In Olson, like Koerth, the information was provided by a newly-arrested informant who had not been presented to the Magistrate Judge for a demeanor review. See Olson, 408 F.3d at 371. However, in Olson, the Seventh Circuit stated that the informant's information was "a firsthand account of what he had seen in Olson's residence" and was of "sufficient detail, describing large quantities of marijuana

7

stored in Olson's safe and the presence of a pound of marijuana in Olson's bedroom, as well as several guns in the residence as a whole, that he had observed only two days earlier." Olson, 408 F.3d at 370.  The Seventh Circuit also noted that there was some limited corroboration in the form of a report from a "concerned citizen," a review of confidential intelligence records which yielded several reports linking Olson to drug trafficking, and a criminal history check on Olson which showed he had been convicted of numerous felonies involving controlled substance violations. Olson, 408 F.3d at 370-71.  The Seventh Circuit further found that the informant in Olson made an admission against his penal interest, which carried with it a presumption of reliability.  Olson, 408 F.3d at 371.  The Seventh Circuit concluded that, taken together and viewed under the "totality-of-the-circumstances" standard, the information in the affidavit "provide[d] enough to establish probable cause."  Olson, 408 F.3d at 372.

       The Government argues that, here, the information was based upon the CI's personal observations and the information was sufficiently detailed, noting that the CI stated that he saw two plastic baggies containing crack cocaine and a large quantity of United States currency sitting on a table in the living room.  The Government also argues that the information was corroborated because other confidential informants had told ECITF agents that Defendant actively delivered and sold crack cocaine, several arrested individuals linked Defendant to the sale and delivery of crack cocaine, and a criminal history check of Defendant revealed that Defendant had prior arrests and convictions for drug offenses and armed robbery.  The Government also notes that a doubtful case should be resolved in favor of upholding the warrant.  See Olson, 408 F.3d at 372, citing United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000).

       After careful review, this court concludes that, although it is a close call, the affidavit in this case is sufficient to establish probable cause.  Defendant is correct that "the police must do more that simply run a record check of the accused, because this alone does not corroborate a CI's statements alleging that a search will uncover evidence of a crime."  Peck, 317 F.3d at 757; see also Olson, 408

F.3d at 371 ("[a]lone, a record check cannot serve to corroborate an informant's account"). However, the Government is correct that other corroboration was also provided in this case, based upon the statements of other confidential informants and arrested individuals involved in the sale and delivery of crack cocaine. This court therefore agrees with the Government that the affidavit provided sufficient detail and some corroboration, although not quite as much corroboration as in Olson.

However, in any case, this court further concludes that, even if the warrant was not supported by probable cause, the Government is correct that the good faith exception applies.

### 3. GOOD FAITH EXCEPTION

Under the good faith exception to the exclusionary rule, courts will not suppress evidence when a police officer relies in objective good faith on a faulty but facially valid search warrant. See Leon, 468 U.S. at 926; see also Harju, 466 F.3d at 606-07. As noted, in both Koerth and Peck, the Seventh Circuit determined that there was not sufficient evidence to support the issuance of the search warrant. However, in both cases, the court then concluded that the good faith exception applied so that the district judge properly denied the motion to suppress the evidence. Koerth, 312 F.3d at 872; Peck, 317 F.3d at 757-58. The court in Harju stated:

> When evidence has been obtained pursuant to a subsequently invalidated search warrant, we will exercise our discretion and admit the evidence only if we are convinced, after review, it is appropriate to do so pursuant to Leon's exception to the exclusionary rule. That is to say, we will admit the evidence unless: (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer "would have known

   that his affidavit failed to establish probable cause and that he should
   not have applied for the warrant."

Harju, 466 F.3d at 607, quoting Koerth, 312 F.3d at 869 (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)).

  As noted, Defendant has argued that, because the affidavit in this case was indistinguishable from the affidavit found insufficient in Peck, the Leon good faith exception does not apply. This court concludes, however, that the facts in Peck are not sufficiently similar to those presented here as to undermine Officer Endsley's reasonable reliance on the warrant. See Harju, 466 F.3d at 608. This court concludes that the affidavit in this case is not indistinguishable from the affidavit in Peck and, in fact, is more similar to the affidavit found sufficient in Olson.

  This court further notes that "[a]n officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith." Koerth, 312 F.3d at 868. Two ways that the defendant may rebut this prima facie case are by presenting evidence to establish either that: (1) the magistrate "wholly abandoned his judicial role" or otherwise failed in his duty to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police;" or (2) the officer submitted an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Koerth, 312 F.3d at 868, quoting Leon, 468 U.S. at 914, 923. This court concludes that Defendant has not rebutted the presumption of good faith.

  In United States v. Stevens, 380 F.3d 1021, 1025 (7th Cir. 2004), a case where this court's ruling on a motion to suppress was affirmed by the Seventh Circuit, the court stated that "[a]lthough it is debatable whether the affidavit contained sufficient facts to establish probable cause, it is not so devoid of facts that a reasonable officer could not have believed probable cause existed." This court concludes that the same is true in this case.

  IT IS THEREFORE ORDERED THAT:

  (1) Defendant's Motion to Suppress Evidence (#11) is DENIED.

(2) This case remains scheduled for a status conference on June 26, 2007, at 1:30 p.m.

ENTERED this 20th day of June, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE